**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jack Walder WRIGHT a/k/a Robert Morgan, John C. Heredia, and Joseph Wayne Haws, Defendants-Appellants.**

**Nos. 84–1088, 84–1133 and 84–1134.**

United States Court of Appeals,
Tenth Circuit.

Aug. 11, 1987.

Brent W. Ward, U.S. Atty., Samuel Alba and Stewart C. Walz, Asst. U.S. Attys., Salt Lake City, Utah, for plaintiff-appellee.

John C. Green, Salt Lake City, Utah, for defendants-appellants Joseph Wayne Haws and John C. Heredia.

Mary C. Corporon, Salt Lake City, Utah, for defendant-appellant Robert Morgan.

Before BARRETT and SEYMOUR, Circuit Judges, and KANE, District Judge.*

KANE, District Judge.*

## FACTS

Defendants Joseph Haws, John Heredia and Jack Walder Wright, a/k/a Robert Morgan [hereafter named Robert Morgan] raise eight allegations of error in their appeals from jury convictions on counts of conspiracy, two counts of interstate transportation of money obtained by fraud and one count of wire fraud. The focal point of the case was the activities of a corporation known as Fiscal Services, Inc. [FSI].

The most important aspect of the FSI business was an accounts payable program. Although modified from time to time, the essence of the program was to offer customers a means for paying their bills within a few days after receipt of a proper voucher for payment. In the interim, FSI would use the customers money to invest in such things as commodity futures. Certain customers were told that the funds obtained through the accounts payable program would be used to purchase bond shares so as to protect their monies. In some instances representations were made to the customers that their bills would be paid at a discount. FSI personnel also made representations to their customers that there would be an additional return on investment based upon a percentage split in the profits made by FSI.

The customers, or "clients" as FSI preferred to call them, would send money to FSI expecting FSI to send the money on to creditors in a timely fashion. Instead, FSI would transfer the money to a related entity, General Clearing House, which would buy tax free bonds. The bonds, in turn, were offered to other investors as collateral to put money into the program that would pay the "clients'" bills. While FSI had control of the money during the lag time, it would use it to invest in commodities markets wistfully hoping to earn a substantial return.

During 1979 and 1980 a number of customers placed in excess of $3,000,000 with

* The Honorable John L. Kane, Jr., United States District Judge of the District of Colorado, sitting by designation.

FSI. With little or no break in continuity the payables program began to have difficulty and a number of accounts payable of the customers were not paid in timely manner. By mid–1981 the program and FSI collapsed.

The trial began on October 31, 1983 with these three defendants, Morgan, Haws and Heredia remaining for verdict. The trial continued through November 10, 1983 when the jury returned verdicts of guilty against all three defendants on all four counts.

## PROCEDURAL RECORD

On May 11, 1983, the grand jury issued a four count indictment against four defendants, Robert Morgan, Joseph Wayne Haws, John C. Heredia and Sherman Davidson. Count I charged conspiracy in violation of Title 18, U.S.C. § 371. Counts II and III charged interstate transportation of funds obtained by fraud in violation of Title 18, U.S.C. §§ 2314 and 2. Count IV charged fraud by wire in contravention of Title 18, U.S.C. § 1343. On September 28, 1983, a superseding indictment was filed. The superseding indictment, however, did not differ significantly from the original indictment.

The trial of all four defendants was originally set for June 27, 1983. On June 16, 1983, the government filed a Motion for a Continuance and Notice of No Objection. On July 12, 1983, the trial judge continued the trial to September 6, 1983. Following entry of the court's order continuing the first trial setting, the court appointed new defense counsel for defendant, Robert Morgan. On about August 11, 1983, a hearing was had on the motion of the defendants Morgan and Davidson for continuance of the trial. On August 22, 1983, the trial court continued the trial from September 6, 1983, to October 31, 1983.

At the hearing on August 11, 1983, the court set a discovery cut-off and motion cut-off date of August 31, 1983. On August 31, 1983, defendants Haws and Heredia filed motions to suppress direct and derivative evidence obtained in a search of premises located in Salt Lake City, Utah conducted on September 16, 1981 and any evidence obtained from an interview of the defendant Haws on May 5, 1983 at Provo, Utah. Defendants Haws and Heredia also filed motions for a bill of particulars, for a severance of trial from that of the co-defendants, Robert Morgan and Sherman Davidson on the grounds of antagonistic defenses, to identify, segregate and produce discoverable matter, for disclosure of impeaching information and for disclosure of exculpatory evidence. On August 30, 1983 Robert Morgan filed motions identical to those motions filed by Haws and Heredia and joined in the Haws and Heredia motions. (So, too, did Davidson.) In addition, Morgan filed a motion in limine to restrict introduction of evidence, motion in re: problems with discovery and motion for a preclusion order. On August 30, 1983, Haws, Heredia and Morgan moved for a continuance of the trial date of October 31, 1983.

On October 19, 1983, the motions to continue trial came on for hearing. The motion was denied. The government attorneys Alba and Walz, indicated that by October 19, 1983, or October 20, 1983, all *Jencks Act* material (18 U.S.C. § 3500), all written material, all statements of witnesses interviewed by the government and intended to be called by the government and all exhibits in the evidence room of the United States Attorney's Office intended to be introduced at the trial of the case would be singled out for counsel and identified and made available for inspection, copying, interviews, etc. This additional material was to be made available by Friday, October 21, 1983, or Monday, October 24, 1983. In addition, government counsel indicated that responses to the motions of the various defendants, including motions for bills of particulars and motions for disclosure of discoverable evidence would be delivered to defense counsel and filed no later than October 20, 1983.

On October 27, 1983, Haws, Heredia and Morgan filed yet more motions to continue the trial date. On October 28, 1983, all motions filed were heard. The court denied the several motions for continuance,

denied the motions for severance, denied the motions for bills of particulars, denied the motions to suppress, denied the motion to dismiss the indictment, accepted a Stipulation of Counsel Re: the Motion in Limine of Defendant Morgan, and reserved ruling on the motion of Morgan for preclusion of evidence, including a diary of one Richard Taylor Cardall.

On October 25, 1983, the fourth defendant in this action, Davidson, entered into a plea bargain with the United States Attorney. This case against him was dismissed. Davidson later appeared as a government witness at the trial.

Defendants Haws, Heredia and Morgan raise eight points of error:

### 1. *Denial of Motion for Continuance*

After granting two motions for continuance of trial (motions of July 12, 1983 and August 11, 1983), the court denied a third motion made on October 19, 1983. The grounds for all of these motions were that defense counsel needed more time to prepare for a case this complex. The court denied the third motion because it felt that defense counsel had been given enough time and that the case, while complex, did not become less so just by waiting longer. Accordingly, trial began on October 31, 1983. Appellants complaint that, although the government had an "open file" policy previously in effect, they were not told what exhibits the government would be using until October 19, and this did not give them enough time. While we do not approve in any manner the cavalier way in which the government's attorneys treated discovery, our analysis does not stop at this threshold. Indeed, this entire appeal could have been avoided or significantly simplified had the government's attorneys cooperated with the court and appointed counsel by providing discovery in an organized manner at the earliest possible time.

■ It is clear that motions for continuance are addressed to the discretion of the trial court. Even if the defense is given a large amount of material to prepare in a short time, a showing of clear abuse of discretion resulting in manifest injustice is required before there can be reversal. *United States v. Gonzales-Palma,* 645 F.2d 844, 846–47 (10th Cir.1981). Here there is no showing that the ability of counsel to be effective was at all affected by the denial of the third motion for continuance. cf., *United States v. King,* 664 F.2d 1171 (10th Cir.1981). We have scrutinized the entire record with a view to determining whether there was prejudice to the defendants and whether the trial suggested unfairness. On the contrary, we find the defense was vigorous and informed.

### 2. *Motion for Bill of Particulars*

Defendants Haws and Heredia moved for a bill of particulars on August 31, 1983. The motion was denied at a hearing on October 28. Defendants insist the requested information was essential to allow them to put on a defense. The government replies that the information concerned evidentiary matters that need not be given out in advance of trial.

■ For more than ample reasons, the granting or denial of a motion for bill of particulars is left to the discretion of the trial court. *United States v. Moore,* 556 F.2d 479 (10th Cir.1977). Absent a showing of prejudice, the denial of a motion for bill of particulars is not error. *United States v. Crim,* 527 F.2d 289, 293 (10th Cir.1975), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976). This is so even where denial might be construed as an abuse of discretion. *United States v. Lewis,* 547 F.2d 1030 (8th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977); *United States v. Thevis,* 474 F.Supp. 117, 123–24 (N.D.Ga.1979).

A question arises whether abuse of discretion and a showing of prejudice are conceptually separable. This question has been blurred by the imprecision with which the courts have approached the issue. For instance, in *United States v. Martino,* 648 F.2d 367 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982), the court stated:

> Action on a motion for bill of particulars is committed to the sound discretion of

the trial judge. We may reverse a ruling denying the motion only if a defendant demonstrates that he was 'actually surprised at trial *and thus* incurred prejudice to his substantial rights by the denial.' ... *Id.* at 383 (emphasis added; citation omitted).

In *Lewis,* on the other hand, the court opined it "may reverse only upon a finding of clear prejudice *and* abuse of discretion." *Id.* at 1033 (emphasis added).

The difference between the *Martino* and *Lewis* approaches may seem insignificant at first blush, but the distinction is pregnant with more compelling implications. Under the *Martino* approach, the prejudice resulting from surprise due to denial of the motion is simply one manifestation of an abuse of discretion. Under *Lewis,* on the other hand, reversal is mandated only where there has been both an abuse of discretion and actual prejudice.

■ This confusion has stemmed from indiscriminate use of the term "prejudice" as one form of abuse of discretion while simultaneously adopting the same term to describe an absence of harmless error. An abuse of discretion, does not require reversal if that abuse amounted to harmless error. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (claim of ineffective assistance of counsel will occasion reversal of criminal conviction only if defendant shows both that counsel's performance was deficient *and* that the deficient performance prejudiced the defense).

■ A two-part analysis is required and the burden of showing both abuse of discretion and prejudice rests with the defendant. The *Lewis* case dealt with the question of prejudice arising from joinder of counts. *Thevis* addressed the same issue with regard to a motion for bill of particulars and stated:

> If the particular requested is such that on its face its nondisclosure until trial would result in prejudicial surprise to the defendant or the preclusion of an opportunity for meaningful defense preparation, then the request must be granted. (Citations omitted.)

On the other hand, if the requested particular is not such that the Court can determine on its own that non-disclosure until trial would result in prejudicial surprise or the preclusion of an opportunity for meaningful defense preparation, then the Court must balance the competing interests of the defense and the government. Where there is no prima facie case for disclosure, the defendant has the burden of showing by brief, affidavit or otherwise that nondisclosure would lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation. *Thevis,* 474 F.Supp. 117, 123–24.

■ An abuse of discretion occurs when a judicial determination is arbitrary, capricious or whimsical. It is not merely an error of law or judgment, but an overriding of the law by the exercise of manifestly unreasonable judgment or the result of impartiality, prejudice, bias or ill-will as shown by evidence or the record of proceedings. 1 *Words and Phrases* 45 (1986 Cum. Supp.) While clearly not the situation in the case at bar, an abuse of discretion could occur where the trial court fails to articulate a reason for denial of a motion for bill of particulars and no such reason is readily apparent from the record. As stated in *United States v. Moore,* 556 F.2d 479, 483 (10th Cir.1977);

> In any event, the granting, or denial, of a motion for a bill of particulars is a matter lying within the sound discretion of the trial court, and its exercise of that discretion will not be grounds for reversal on appeal in the absence of an abuse of that discretion. *United States v. Hedges,* 458 F.2d 188 (10th Cir.1972). We find no such abuse in the instant case. *Additionally,* there is nothing in the record to indicate any prejudice to the defendant resulting from the denial of her motion for a bill of particulars. It is obvious from a reading of the record that at all times she knew what the charge against her was. (Emphasis added.)

Further, as Judge Barrett has written in *United States v. McClure,* 734 F.2d 484,

483 (10th Cir.1984), in connection with the sufficiency of an indictment: "Even if we were to find the indictment facially insufficient, Tafoya has made no showing that he was actually prejudiced by the absence of the above information." In the former instance, the error alleged is an abuse of discretion. In the latter instance, the error is one of legal insufficiency. Yet in both, the error must be coupled with a showing of prejudice.

■ Here defendants suggest they were prejudiced by denial of the motion because of the volume of documents and the complexity of the facts presented. Mere recitation of volume and complexity, however, is insufficient. Defendants have failed entirely to show how they were prejudiced. Our independent review of the record does not fill that void for them. As the trial court clearly perceived, the indictment was framed in the statutory language and was specific in each count. The conspiracy charge was particularized to a degree beyond customary expectation. In light of requests similar to those made here for names and addresses of victims, for specific acts personally performed in setting up bank accounts and other evidentiary details, this court stated in *United States v. Barbieri*, 614 F.2d 715, 719 (10th Cir.1980):

> ... It is not the function of a bill of particulars 'to disclose in detail the evidence upon which the government will rely at trial.'

The trial court did not abuse its discretion in denying the motion nor did the defendants make any showing of prejudice.

### 3. *Motion for Preclusion of Evidence*

■ The court denied defendants' motion to preclude certain evidence that was not provided to the defense before the date trial began. It is not clear just what this evidence was; the government's brief mentions "summary witness's schedules of the financial evidence." The defense's basic argument here is the same as that in the motion for continuance; i.e., that the trial was too complex for the defense to prepare adequately. For the same reasons previously stated, the point on appeal is rejected.

### 4. *Motion to Suppress Evidence From a Search*

Defendants moved to suppress documents and a cassette tape found at FSI offices at Suite 201, 986 Atherton Drive in Salt Lake City. They argue that the search warrant was based on inadequate, conclusory allegations in an affidavit by FBI agent Loren Brooks. The government responds by arguing that the defendants had no Fourth Amendment standing to challenge the search. They had no "legitimate expectation of privacy" in either the premises or the items seized.

■ It is a fundamental axiom of our jurisprudence that a defendant must have a cognizable expectation of privacy in the premises searched. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Indeed, it is not grounds for suppression at all that the reasonable expectation of privacy of a third party was even flagrantly violated. *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980).

■ Here, the trial court quite properly found there was no subjective expectation of privacy. The defendants neither owned nor possessed the items they sought to have suppressed. They had no right to control or exclude the use by others of the property or the premises. At best, the grounds for suppression by these defendants amount to an aspiration that incriminating evidence not be used against them. There was no error in denying the motion to suppress. Without a reasonable expectation of privacy being established, there is no need to proceed further to review questions of probable cause and sufficiency of the affidavit used to obtain the warrant.

### 5. *Motion to Suppress a Tape Recording Found in the Search*

One of the items found in the search discussed in issue No. 4 was a cassette tape on which an inculpatory telephone conversation between Cardall, Morgan, Haws and Heredia had been recorded by Cardall. The defendants argue that this evidence

should be suppressed on the separate ground that their expectation of privacy when conversing on the telephone was violated. The government responds that, while defendants do have a right not to have the conversation directly intercepted, they cannot complain if one of the participants records the conversation and later publishes it. The problem here is that Cardall did not "publish" the tape himself; it was seized in a search.

 While the governments response is clearly inappropriate, the judge's ruling was not. The appropriate response is that where one party to a conversation records it, the expectation of privacy in the recording rests with the possessor of the recording and not the other parties to the conversation. The issue, therefore, is the same as that discussed in issue No. 4 and is answered in the same way. There was no basis for granting the motion to suppress.

### 6. *Motion for Severance*

 Defendants Haws and Heredia moved for severance of their trial from Morgan's on grounds that they would be prejudiced since there was more evidence against Morgan than against them. The motion was denied. On appeal, Haws and Heredia allege prejudice from the fact that they took the stand but Morgan did not. Defendants concede that the granting or denying of a motion to sever rests within the sound discretion of the trial court, *United States v. Pilling*, 721 F.2d 286, 297 (10th Cir.1983). As with the questions previously addressed concerning continuances and bills of particulars, defendants must show actual prejudice as well as abuse of discretion before a ruling can constitute reversible error.

 Defendants Haws and Heredia claim prejudice because they took the stand and Morgan did not. Such a scenario cannot amount to prejudice; it is neither law nor fact. Any defendant's election to testify or remain silent is inconsequential. [We note there is no objection to the court's instruction on this issue.] What might be of consequence would be the specific facts related in testimony given or not related

because of testimony withheld. Again, we are unable to confront the issue because no specifics are presented. As previously stated, our independent review of the entire record does not provide a substitute for the absent argument.

 Finally, more is required to establish an abuse of discretion than an assertion that separate trials might have resulted in a better chance of acquittal. *United States v. Hines*, 696 F.2d 722, 732 (10th Cir.1982). Particularly where as here a conspiracy is charged, individual conspirators should be tried together. *Hines, supra* at 732.

### 7. *Use of Portions of Cardall's Diary*

The government was allowed to use inculpatory portions of Cardall's diary under the "residual" hearsay exception, Fed.R. Evid. 804(b)(5). The defendants argue that this was improper because there were no "circumstantial guarantees of trustworthiness" as required by the rule. For all we know, they say, the diary could have been fiction. The government counters that the diary was self-incriminating, corroborated by other evidence and relied on daily by Cardall. The defendants also complain that the court, after admitting the government's portions, excluded other portions that they wanted to present.

Defendant Morgan challenges the court's admission of portions of the diary on the grounds that two of the four criteria in that rule were not met. Specifically, Morgan alleges that the diary was not more probative on the point for which it was offered than any other evidence, and the diary did not have sufficient guarantees of trustworthiness.

The determination for the admission and exclusion of evidence is left to the trial court's discretion. The trial court's decision will be overturned only if there is a clear abuse of discretion. *United States v. Hill*, 627 F.2d 1052, 1055 (10th Cir.1980).

 The entries from Cardall's diary are more probative on the point of Cardall's admissions of meetings and discussions about the FSI program and his part in the

FSI program than any other evidence. All parties agreed that no evidence was available from Cardall due to his invocation of his rights under the Fifth Amendment. The trial judge had a reasonable basis for concluding that the evidence was more probative on the point for which it was offered than other evidence which could be obtained.

The entries in the diary admitted upon motion of the government were also sufficiently reliable. In *United States v. McPartlin*, 595 F.2d 1321, 1350 (7th Cir. 1979), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979), the Seventh Circuit indicated that a desk diary containing regular and frequent entries documenting relationships between the author and other officials made for the purpose of allowing the author to rely on the entries was sufficiently reliable to be admitted under the residual exception to the hearsay rule. The court indicated that reliability was demonstrated by the highly self-incriminatory nature of the entries, the regularity with which they were made, and the authors' need to rely on the entries. In this case, the trial court was satisfied that the diary was kept with sufficient regularity. There was no apparent reason for falsification of the entries. Additionally, the diary was self-incriminatory and the entries introduced were corroborated by other testimony.

■ Morgan also complains that he was not allowed to introduce several portions of the diary. Many of the portions of the diary Morgan sought to admit were ruled admissible by the trial judge. The portions ruled inadmissible were not demonstrably relevant to the issues at trial. Under the doctrine of completeness embodied in Fed. R.Evid. 106, it is not required that portions of a writing which are neither explanatory of the previously introduced portions nor relevant to the introduced portions admitted. *United States v. Marin*, 669 F.2d 73 (2nd Cir.1982). It would be puerile to suggest that if any part of a statement is be admitted the entire statement must be admitted.

■ Here the court determined the proffered portions were not sufficiently relevant to the issues at trial or to previously admitted sections of the diary to warrant admission. Such decisions are properly left to the trial judge. We hold he did not abuse his discretion in refusing to admit portions of the diary proffered by appellant Morgan.

### 8. *Sufficiency of the Evidence*

■ In order to determine whether the evidence was sufficient to establish guilt beyond a reasonable doubt, the evidence must be viewed in the light most favorable to the government. We must determine whether there existed sufficient evidence, direct or circumstantial, together with the reasonable inferences drawn from that evidence, from which the jury may find a defendant guilty beyond a reasonable doubt. *United States v. Parnell*, 581 F.2d 1374, 1379 (10th Cir.1978). The record contains sufficient evidence from which such a finding could be made as to each defendant on each of the four counts.

Each defendant participated in the conduct of FSI and its related entities. Morgan acknowledges he was an advisor to the FSI program, Haws admits he was responsible for transferring money run through the program based upon orders from Cardall and Morgan, and Heredia acknowledges he was to be a commodities trader in the program with the funds generated by the program. Heredia also acknowledges he received funds and returned them based upon the orders of Cardall. The crucial issue appears to be whether the evidence is sufficient to indicate a knowledge of the representations made in the program and that those representations were false.

The testimony of Greg Phay proves the knowledge of each of the appellants that the FSI program required that bonds be purchased with the client's funds. In the tape introduced through his testimony, the three appellants and Cardall talked about transferring $450,000 from Salt Lake City to California. Cardall stated that although the contract requires that bonds be purchased with the money, he was not buying

bonds with that money. Cardall also indicated that he was about three or four hundred thousand dollars in arrears on the purchase of bonds. During this conversation, Morgan indicated that they would come up with bonds on another turnaround. Those portions of the conversation conclusively attribute knowledge of the requirement that bonds be bought to all three of the appellants and also inform the appellants that bonds are not being purchased with the clients' funds.

In another part of the conversation, Cardall indicates that he has sent $93,000 more than he has received to Morgan and Haws. Morgan states he thought it was only about $10,000, but Haws indicates it was more than that. A jury can determine from that portion of the conversation that the appellants knew monies were being used for purposes other than those promised the customers.

The record demonstrates the appellants knew of the Fiscal Services program in its entirety. Sherman Davidson and Michael Olsen testified about a meeting explaining the FSI program that was held at Knott's Berry Farm in California in November of 1979. At that meeting, both Richard Cardall and appellant Morgan gave presentations about the FSI program. Sherman Davidson testified the meeting was to acquaint each individual with his role in the FSI program.

Furthermore, both Haws and Heredia testified they thought that a commodities trading program to be conducted by Heredia with funds funneled to him by Haws was part of the program. However, Greg Phay testified that he told both Haws and Heredia that as no commodities trading was going on, they should get out of the program. If both Haws and Heredia thought the commodities trading was part of the program and knew that such trading was not taking place, as they both also admitted, a jury could well determine they knew a fraudulent scheme was being conducted.

Morgan's knowledge of the fraudulent nature of the scheme is proven by the transaction involving the parallel payables company of Murphy and Rasmussen. Both Murphy and Rasmussen indicated Morgan was responsible for providing the funds to take care of the payables of Mr. Hogberg. Morgan finally did come up with $132,000 to satisfy those obligations, and that money came from Cardall's payable program. Additionally, Murphy testified Morgan assured Murphy and Rasmussen there was no relationship between Murphy and Rasmussen's program and Cardall's program in FSI. Thus, a jury could determine Morgan knew that funds from Cardall's payables program were being used for a totally unrelated program. Also, Rasmussen testified that Morgan said he was the father-developer of the payables program.

Appellant Morgan contends that he had nothing to do with the transfer of funds and therefore cannot be convicted of counts two and three of the indictment. The evidence provided by the four-way telephone conversation, however, indicates Cardall would be sending a substantial amount of money to Haws and Morgan for transmission to Heredia. The monies which are the subject of Counts II and III of the indictment were transferred within a few days of this telephone conversation.

There was sufficient evidence for a jury to infer that each of the appellants was a member of a conspiracy to obtain money through fraudulent pretenses and false representations and transport that money in interstate commerce. Additionally, the four-way telephone conversation among Cardall, Morgan, Haws, and Heredia, was participation in that fraudulent scheme by the use of interstate wire communications. Thus, the evidence was sufficient to convict all of the appellants of all of the counts beyond a reasonable doubt.

AFFIRMED.