Anita WIKRENT and BMS Administrative Services,
Plaintiffs-Respondents,

v.

TOYS "R" US, INC., Defendant-Appellant.

Court of Appeals

*No. 92–2583. Submitted on briefs August 10, 1993.—Decided
September 14, 1993.*

(Also reported in 507 N.W.2d 130.)

297

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Bauman* and *Paul E. Benson* of *Michael, Best & Friedrich* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *J. Michael End* of *Gray & End*, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

FINE, J. This is an appeal from a judgment entered on a jury verdict in favor of Anita Wikrent against Toys "R" Us, Inc., for personal injuries Wikrent claims she sustained when she was hit by a falling toy

refrigerator in one of the Toys "R" Us stores. Toys "R" Us asserts that two alleged errors by the trial court require a new trial: first, the trial court prevented Toys "R" Us from calling as a witness one of Wikrent's physicians because counsel for Toys "R" Us had *ex parte* conversations with the physician; and second, the trial court admitted into evidence an out-of-court statement by one of the company's former employees, who had been called as a witness by Wikrent. We affirm.

1. *Exclusion of testimony by Wikrent's physician.*

A. David Hartman, M.D., examined Wikrent at the request of one of Wikrent's treating physicians to determine the extent of, and the bases for, her claimed injuries. Dr. Hartman was identified by Wikrent in pre-trial discovery as a person with knowledge about the case and a potential witness. A copy of the report that Dr. Hartman prepared for the treating physician was given to Toys "R" Us. During the course of her deposition, Wikrent testified about the treatment provided by her physicians, including Dr. Hartman, and her discussions with them. Apparently, Wikrent made no specific attempt to reserve any physician-patient privilege.[1]

---

[1] The general rule of the health-care worker/patient privilege is set out in Rule 905.04(2), Stats.:

> GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under

According to an affidavit submitted by Paul Benson, one of the lawyers for Toys "R" Us, Benson called Dr. Hartman once and met with him twice to discuss the doctor's findings. Dr. Hartman agreed to testify on behalf of Toys "R" Us. Both the telephone conversation and the meetings took place after Wikrent had given to Toys "R" Us a copy of Dr. Hartman's report, and after Wikrent's deposition testimony. Benson's affidavit avers that none of the discussions involved "physician-patient confidences which were outside the scope of Dr. Hartman's report."

When Wikrent's lawyer learned of the *ex parte* discussions Dr. Hartman had with the lawyer for Toys "R" Us, he filed a motion *in limine* to prevent Dr. Hartman from testifying at the trial. The trial court granted the motion.

B. Privileges in Wisconsin are purely statutory. *See State v. Migliorino*, 170 Wis. 2d 576, 588, 489 N.W.2d 678, 682–683 (Ct. App. 1992). When a patient puts his or her "physical, mental or emotional condition" in issue by relying on that "condition as an element" of his or her "claim or defense," the physician-patient privilege gives way. Rule 905.04(4)(c), Stats.; *see also Ranft v. Lyons*, 163 Wis. 2d 282, 291–292, 471 N.W.2d 254, 257 (Ct. App. 1991).[2] By making her medi-

---

the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor.

[2] Rule 905.04(4)(c), Stats., provides:

*Condition an element of claim or defense.* There is no privilege under this section as to communications relevant to or within the scope of discovery examination of an issue of the physical, mental or emotional condition of a patient in any proceedings in which the patient relies upon the condition as an element of the patient's

cal condition an issue in this lawsuit, Wikrent is unable to interpose the privilege to prevent the disclosure of confidential communications concerning that condition. This truism does not, however, answer the question posed here: namely, whether the failure to specifically object in advance to an opponent's potential *ex parte* communications with a party's physician prevents the party from objecting later and seeking preclusion of the physician's testimony on that ground. We conclude that it does not.

The seminal authority in Wisconsin dealing with *ex parte* communications with a party's physician is *State ex rel. Klieger v. Alby*, 125 Wis. 2d 468, 373 N.W.2d 57 (Ct. App. 1985), where we held that "Wisconsin law prohibits a defendant's attorney from conducting private pretrial interviews with a plaintiff's treating physician." 125 Wis. 2d at 469, 373 N.W.2d at 58. Counsel for the plaintiffs in *Klieger* had given to the lawyers for the defendants a limited medical authorization, which permitted the lawyers to examine medical records but specifically noted that it was not also authorization for the defendants' lawyers to discuss those records "with any treating or examining physician." *Id.*, 125 Wis. 2d at 469–471 & n.2, 373 N.W.2d at 58–59 & n.2 (capitalization in original omitted). We held that under the clear language of Rule 905.04(4)(c), Stats., disclosure of matters within the physician-patient privilege was limited to standard *discovery procedures*—even though the privilege could not be interposed because the patient had put in issue

claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of the party's claim or defense.

his medical condition. *Id.*, 125 Wis. 2d at 473, 373 N.W.2d at 60. Rule 905.04(4)(c), Stats., provides:

> There is no privilege under this section as to communications *relevant to or within the scope of discovery examination* of an issue of the physical, mental or emotional condition of a patient in any proceedings in which the patient relies upon the condition as an element of the patient's claim or defense.

(Emphasis added.) As *Klieger* notes, "[p]ermissible methods of discovery include oral or written depositions and interrogatories"—not "informal, *ex parte* conferences." 125 Wis. 2d at 473, 373 N.W.2d at 60.

Contrary to the contention by Toys "R" Us, the *Klieger* rule is not limited to those situations where the party protesting the *ex parte* communications has objected preliminarily; the "objection" is preserved by the rule itself as interpreted by *Klieger. See also Zintek v. Perchik*, 163 Wis. 2d 439, 469, 471 N.W.2d 522, 533–534 (Ct. App. 1991) (applying *Klieger* to situations where *ex parte* discussions with a party's physicians concern treatment by others). Similarly, even though Rule 905.11, Stats., provides that a privilege granted by chapter 905, Stats., is waived if the holder of the privilege "voluntarily discloses or consents to the disclosure of any significant part" of the protected material, the rule is not license for opposing counsel to have *ex parte* communications with those subject to the privilege. Simply put, although Wikrent's filing of this lawsuit and her subsequent revelation of aspects of her communications with Dr. Hartman and her other physicians may prevent her from enforcing the privilege, these actions do not vitiate *Klieger*'s requirement that

inquiry into these areas be made only in the course of formal discovery procedures. If it were otherwise, and *ex parte* communications were permitted, the patient would be unable to enforce those aspects of the privilege not waived; the patient would, in the words of *Klieger*, "lose[ ] control of the privilege." 125 Wis. 2d at 474, 373 N.W.2d at 61. As explained in *Karsten v. McCray*, 509 N.E.2d 1376, 1384 (Ill. Ct. App. 1987) (citation omitted):

> Discussion of the patient's confidences under circumstances other than through formal discovery is potentially harmful to the interests of the patient in that the physician might disclose intimate facts regarding the patient which are unrelated and irrelevant to the mental or physical condition placed at issue in the lawsuit. A plaintiff should be allowed to protect his physician-patient privilege before it is compromised. Requiring utilization of formal discovery procedures places the plaintiff in a position to object to irrelevant inquiries.

The *Klieger* rule was violated here. The question remains whether exclusion was proper.

As Toys "R" Us recognizes, a trial court's decisions on evidentiary matters are within its broad discretion, and its rulings will not be overturned on appeal if they have "a reasonable basis" and were made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (citation omitted). Although neither *Klieger* nor *Zintek* concerned situations where evidence was excluded as a consequence of the *Klieger* rule's violation, we have implicitly recognized that exclusion may be an appropriate remedy. *See Haack v. Temple*, 150 Wis. 2d 709,

718, 442 N.W.2d 522, 526 (Ct. App. 1989) (reversing exclusion where opposing counsel "merely described for the doctor the mechanics of the deposition that was about to take place"). We now, in agreement with *Karsten*, 509 N.E.2d at 1383–1384, explicitly hold that exclusion of the testimony of a party's physician is an appropriate remedy when there are *ex parte* substantive discussions with that physician by an opposing party. Inasmuch as the trial court applied the correct legal standard and based its decision on facts of record, its order granting Wikrent's motion *in limine* must be affirmed.

### 2. *The out-of-court statement.*

A. The out-of-court statement at issue was made by a former Toys "R" Us employee, Jill Pieronek, some two years after the accident, to an insurance adjuster working on behalf of Toys "R" Us.

Wikrent had testified at the trial that she was in the aisle where the Toys "R" Us store had toy kitchen appliances when she saw a woman employee moving stock along the top shelf with a long stick. Wikrent was below the shelf, and testified that when she looked up at the toy appliances "they had all bunched up above me and they all came down on me." Later in the trial, Pieronek testified that five to ten minutes before the accident she had been straightening the bottom shelf in the area "but not the top shelf." She claimed to have been some fifteen or twenty feet away when Wikrent was injured, and denied using a stick to move any of the items.

During his re-direct examination of Pieronek, Wikrent's lawyer read, without objection, Pieronek's statement given to the insurance adjuster that Pieronek had been straightening the toys, "which are

stacked vertically on the top shelf."[3] He also read from other portions of the statement, as did the lawyer for Toys "R" Us during the course of his earlier cross-examination of Pieronek. The statement was written by the claims adjuster, but signed by Pieronek. Later, when the jury had left for lunch, one of the lawyers representing Toys "R" Us moved admission of the entire statement, arguing that Wikrent's lawyer had indicated to the jury by his questions to Pieronek that Pieronek had consciously decided not to review the statement prior to testifying. Toys "R" Us sought admission of the statement to demonstrate its consistency with Pieronek's trial testimony. Wikrent's lawyer objected that the statement was hearsay as to Toys "R" Us. Ultimately, the trial court instructed the jury that it could only consider that portion of the statement in which Pieronek said that she was straightening toys on the top shelf. Toys "R" Us contends that this was error.

---

[3] Earlier during Pieronek's initial direct-examination by Wikrent's lawyer, the lawyer for Toys "R" Us requested a "bench conference" when Wikrent's lawyer mentioned the statement Pieronek had given to the insurance adjuster. The transcript is silent, however, as to whether an objection was made, and only reflects "[Discussion off the record.]" Any objection that Toys "R" Us might have had or even made at that point to the use of the adjuster's report by Wikrent's lawyer was waived by its failure to preserve the record for purposes of appeal. *See* Rule 901.03(1)(a), Stats. ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike *appears of record*, stating the specific ground of objection, if the specific ground was not apparent from the context.") (emphasis added). Indeed, counsel for Toys "R" Us read from the statement during his cross-examination of Pieronek; as noted, Wikrent's lawyer quoted from the statement during his re-direct examination.

**B.** As already noted, the decision of whether to admit or exclude evidence is within the trial court's reasoned discretion. Pieronek's statement to the insurance adjuster that she was straightening toys on the top shelf was clearly inconsistent with her testimony at trial that she had only straightened merchandise on the bottom "but not the top shelf." As such, the statement was admissible as non-hearsay by virtue of Rule 908.01(4)(a)1, Stats., which permits receipt into evidence for substantive purposes out-of-court statements made by a witness who testifies at the trial and who is "subject to cross-examination concerning the statement," as long as the statement is inconsistent with the witness' trial testimony.[4] Toys "R" Us claims, however, that the trial court should have admitted the entire statement, not just the sentence that was inconsistent with Pieronek's trial testimony.

First, Toys "R" Us argues that the one inconsistent sentence brought the entire statement within the scope of Rule 908.01(4)(a)1, Stats., irrespective of the fact that the rest of the statement was consistent with Pieronek's trial testimony. Toys "R" Us cites no authority that supports this unique and, in our view, incorrect interpretation of Rule 908.01(4)(a)1. Unless required by the doctrine of completeness, an out-of-court statement that is inconsistent with the declarant's trial testimony does not carry with it, like some evidentiary

---

[4] Rule 908.01(4)(a)1, Stats., provides:

A statement is not hearsay if:
 (a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
 1. Inconsistent with the declarant's testimony.

309

Trojan Horse, the entire regiment of other out-of-court statements that might have been made contemporaneously.[5] *See United States v. Wright*, 826 F.2d 938, 946 (10th Cir. 1987) ("It would be puerile to suggest that if any part of a statement is [to] be admitted the entire statement must be admitted."). Toys "R" Us has made no showing that the doctrine of completeness requires the admission of the entire statement that Pieronek gave to the insurance adjuster; it has not demonstrated that any other portions of the statement Pieronek gave to the adjuster were relevant to the portion admitted so that they "ought in fairness be considered contemporaneously with it." Rule 901.07, Stats.; *see Wright*, 826 F.2d at 946 ("Under the doctrine of completeness embodied in Fed. R. Evid. 106 [the federal analogue to Rule 901.07], it is not required that portions of a writing which are neither explanatory of the previously introduced portions nor relevant to the introduced portions [be] admitted.").

■■■

Second, Toys "R" Us argues that the rest of the out-of-court statement that Pieronek made to the insurance adjuster should be received under Rule 908.01(4)(a)2, Stats., which renders non-hearsay an out-of-court declaration that is "[c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." The trial

---

[5] Rule 901.07, Stats., provides:

**Remainder of or related writings or recorded statements.** When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

court specifically found that there was no "evidence in the record that would allow the Court to infer that there was any recent fabrication by this witness, nor [*sic*] that there was any improper influence exerted over her by any person, nor [*sic*] was there any evidence of a motive produced that would induce her to testify other than truthfully." These findings are uncontradicted and are not, therefore, "clearly erroneous." *See* Rule 805.17(2), Stats. (trial court's findings of fact must be accepted on appeal unless they are "clearly erroneous"). The remainder of Pieronek's statements to the adjuster was properly excluded from evidence. *See State v. Peters*, 166 Wis. 2d 168, 177, 479 N.W.2d 198, 201 (Ct. App. 1991) ("[P]rior consistent statements must predate the alleged recent fabrication or improper influence or motive before they have probative value.").

*By the Court.*—Judgment affirmed.