STATE of Wisconsin, Plaintiff-Respondent,

v.

Juan EUGENIO, Defendant-Appellant.†

Court of Appeals

*No. 96–1394–CR. Submitted on briefs February 24, 1997.—Decided April 23, 1997.*

(Also reported in 565 N.W.2d 798.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eduardo M. Borda* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Paul Lundsten,* assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J.   A jury found that Juan Eugenio sexually assaulted a six-year-old girl. He claims, first, that the prosecutor had a duty under Wisconsin law to encourage the victim to make herself available for an interview with a defense investigator. Second, he argues that only when a defendant attacks a victim's "general reputation" for truthfulness, as opposed to an attack on the victim's truthfulness in a particular case, can the State submit evidence showing how the victim

is a truthful person. Third, he contends that the State should not have been permitted to introduce the whole of the victim's earlier statements under the "doctrine of completeness" after he cross-examined the victim about inconsistencies in certain statements. Because Wisconsin law does not impose upon its prosecutors a duty to "encourage" a victim to cooperate with the defense, does not limit rehabilitation evidence to instances where a victim's general reputation for truthfulness is disputed, and does not prohibit the trial court from using its discretion regarding the "doctrine of completeness," we affirm.

The basic facts surrounding the assault are essentially irrelevant to the analysis of the issues presented on appeal. We will therefore discuss the background facts only as they become necessary to our analysis.

We begin with Eugenio's allegation of prosecutorial misconduct. Prior to trial, Eugenio moved to dismiss the case on grounds that the district attorney's office had lobbied the victim and her mother not to cooperate with the defense. Eugenio's investigator had arranged to interview the victim at the district attorney's office a few days before trial. The meeting, however, was not productive because the victim's mother became concerned that Eugenio was only going to use the information gathered during this interview to "mess up" her daughter at trial. The trial court, however, denied the motion, reasoning that the evidence did not show that the district attorney's office discouraged the victim from cooperating with Eugenio.

Eugenio nonetheless complains that the district attorney who was present at the hearing "made certain not to correct [the mother's] mistaken belief that [the investigator] only wanted to 'mess up' her daughter." He argues that the prosecution had a responsibility to

aid the investigator by clarifying for the victim what the interview was about.

The standard that guides this state's prosecutors on their relationship to the defense's investigation was set out in *State v. Simmons*, 57 Wis. 2d 285, 203 N.W.2d 887 (1973). There, the supreme court adopted Standard 3.1(c) of the American Bar Association's STANDARDS RELATING TO THE PROSECUTION FUNCTION (1971), which provides:

> A prosecutor should not discourage or obstruct communication between prosecutive witnesses and defense counsel.
>
> It is unprofessional conduct for the prosecutor to advise any person or cause any person to be advised to decline to give the defense information which he has the right to give.

*Simmons*, 57 Wis. 2d at 292, 293, 203 N.W.2d at 892, 893. Since the prosecution did not impede Eugenio's investigator or otherwise discourage the victim from meeting with him, the State maintains that the prosecution's neutral attitude was proper under the standard adopted in *Simmons*.

As we noted above, however, Eugenio contends that the State's interpretation of this standard is not correct. He argues that a prosecutor is not just required to remain neutral. Rather, a prosecutor also has a duty to try to encourage prosecutive witnesses to make themselves available to the defendant. As support, Eugenio cites to the official commentary that accompanied Standard 3.1(c) adopted in *Simmons*. The pertinent parts of this commentary provide:

> In the event a witness asks the prosecutor . . . whether it is proper for the witness to submit to an

interview by opposing counsel or whether he is under a duty to do so, the witness should be informed that . . . it is proper . . . and that it is in the interest of justice that the witness make himself available . . . .

*Simmons*, 57 Wis. 2d at 293, 203 N.W.2d at 892. So while Standard 3.1(c) directs that a prosecutor should take a neutral stance, Eugenio maintains that the commentary elaborates on how a prosecutor should actively encourage his or her witnesses to interview with the defense. He concludes that under the commentary's view of the standard, the prosecution engaged in misconduct when it failed to clarify for the victim and her mother that the investigator was not there to "mess up" the victim.

■ We nonetheless hold that only Standard 3.1(c) applies because that was the only portion of the Standards that the *Simmons* court adopted. It cited but did not adopt the commentary. We reach this conclusion based on the supreme court's historical practice of formally adopting commentary when it wishes to make the commentary into law.

The official comment which accompanies a source of authority is not automatically law; it is "persuasive authority." *See Paulson v. Olson Implement Co., Inc.,* 107 Wis. 2d 510, 523–24, 319 N.W.2d 855, 861–62 (1982). When the supreme court has determined that a principle in a comment should become law, it has formally adopted it. For example, in *Paulson,* the court referred to U.C.C. § 2–607 comment 4 and stated: "[W]e find it persuasive authority which *we adopt* in order to

protect purchasers." *See Paulson*, 107 Wis. 2d at 523–24, 319 N.W.2d at 861–62 (emphasis added).[1]

In other circumstances, while the court has recognized comments in the text of an opinion, it has elected not to adopt them as law. Here, *Dippel v. Sciano*, 37 Wis. 2d 443, 155 N.W.2d 55 (1967), serves as an example. In *Dippel*, the supreme court adopted the RESTATEMENT (SECOND) OF TORTS § 402A. It did so with the following language: "For products-liability cases we adopt the rule of strict liability in tort as set forth in sec. 402A . . . ." *Dippel*, 37 Wis. 2d at 459, 155 N.W.2d at 63. The *Dippel* court, however, also noted that the Restatement was supplemented by several comments and clarified that: "We do not at this time specifically accept or reject any of the comments . . . ." *See id.* Nonetheless, almost twenty years later, the court was asked to adopt "comment k." *See Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 196, 342 N.W.2d 37, 51–52 (1984). Faced with this question, the court clarified that: "We have not adopted comment K to sec. 402A, and we decline to do so in this case." *Id.* at 197, 342 N.W.2d at 52. In the margin, we have identified two other examples of how the supreme court has treated comments to legal authority.[2]

---

[1] We observe that this court has followed this same practice. In *State v. Schambow*, 176 Wis. 2d 286, 298–99, 500 N.W.2d 362, 367 (Ct. App. 1993), this court adopted "comment 7" to the jury instruction relating to first-degree sexual assault. *See also* WIS J I—CRIMINAL 1200 comment 7. Although we recognized that this comment was not "binding precedent," we stated that: "We believe this comment is an accurate statement of the law, and therefore adopt it as such." *Schambow*, 176 Wis. 2d at 299, 500 N.W.2d at 367.

[2] *See State v. Foellmi*, 57 Wis. 2d 572, 581–82, 205 N.W.2d 144, 149–50 (1973) (adopting American Bar Association's STAN-

Thus, based on the supreme court's historical practice of treating the commentary that often accompanies legal authority as a separate source, we conclude that the comments accompanying Standard 3.1(c) are not authority because the *Simmons* court did not adopt them. We accept the State's explanation that the court only quoted the commentary "as a means of explaining the 'rationale' behind the standard." *See Simmons*, 57 Wis. 2d at 292, 203 N.W.2d at 892.

Having concluded that only Standard 3.1(c) applies, we affirm the trial court's determination that the prosecution did not engage in misconduct. The prosecution remained neutral during the failed meeting between Eugenio's investigator and the victim. While it did not encourage the victim to participate in the interview, it was under no duty to do so.

We next examine Eugenio's arguments concerning the trial court's evidentiary rulings. Here, we first address Eugenio's argument that the court erred in its analysis of the victim's supportive character evidence. It specifically involves the testimony from a counselor at the victim's school. This counselor testified that, in her opinion, the victim was "truthful."

The trial court allowed the State to introduce this evidence after it found that Eugenio had attacked the

DARDS RELATING TO SENTENCING ALTERNATIVES AND PROCEDURES § 6.1(a) (1968), but declining to adopt the commentary to those standards), *overruled on other grounds by Korpela v. State*, 63 Wis. 2d 697, 218 N.W.2d 368 (1974); *see also In the Matter of the Promulgation of Rules of Evidence for the State of Wisconsin*, 59 Wis. 2d R1, R2 (1974) ("The commentary of the Federal Advisory Committee and Wisconsin Judicial Council Committee are not adopted at this time, but shall be printed for information purposes").

victim's character for truthfulness during his opening statements. The court noted that Eugenio had attributed improper motives to the victim, primarily that she was lying about the events in order to get attention. The court therefore determined that the State should be able to rehabilitate the victim's character through the counselor.

On appeal, Eugenio alleges that the trial court made two errors. Eugenio first contends that the trial court misinterpreted the nature of his trial strategy. He argues that he was not attacking the victim's character for truthfulness; rather, he was attacking her ability to recall the facts of this case. Eugenio also argues that the court wrongly determined that his opening statements could serve as the basis for its finding that the victim's character for truthfulness had been attacked.

The admission of supportive character evidence is governed by § 906.08, STATS.,[3] which provides that: "[E]vidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Section 906.08(1)(b). Parties use this type of evidence to circumstantially aid the jury in reaching a conclusion (good or bad) about a particular witness's credibility. *See* 7 DANIEL D. BLINKA, WISCONSIN PRACTICE: EVIDENCE § 608.1, at 296 (1991).

Parties may only introduce supportive character evidence after that witness's character has been directly challenged. *See id.*, § 608.1, at 298. One of the

---

[3] The legislature made minor amendments to the version of this statute that was applied by the trial court. *See* 1995 Wis. Act 225, § 519. Nonetheless, the minor differences between § 906.08, STATS., 1993–94, and § 906.08, STATS., 1995–96, do not affect our analysis.

difficult issues courts have faced regarding this evidence is distinguishing between a mere effort to contradict a witness's testimony and an actual attack on that witness's character. Although both are aimed at a witness's credibility, only the latter opens the door to supportive character evidence. *See State v. Anderson,* 163 Wis. 2d 342, 348, 471 N.W.2d 279, 281 (Ct. App. 1991); *see also* 7 BLINKA, *supra,* § 608.1, at 96 n.11 (Supp. 1997).

In *Anderson,* this court addressed this classification problem and determined that the decision of whether a witness's character was attacked, and thus to admit this type of evidence, must be left to the trial court's discretion. *See Anderson,* 163 Wis. 2d at 346–47, 471 N.W.2d at 280. We explained that determining whether a witness's character has been attacked requires the trial court to "assess the tenor of the defense," an exercise which may not only involve listening to the form of the questions asked by opposing counsel, but also to the tone of those questions. *See id.* at 349, 471 N.W.2d at 281–82; *accord State v. Hernandez,* 192 Wis. 2d 251, 257, 531 N.W.2d 348, 350 (Ct. App. 1995).

Eugenio maintains, however, that the trial court applied the wrong standard when it found that he made such an attack. He directs us to case law from other jurisdictions which he asserts places greater restrictions on what must occur before a trial court can find that a witness's character has been attacked. For example, in *United States v. Dring,* 930 F.2d 687, 691 (9th Cir. 1991), the court wrote that "[v]igorous cross-examination, including close questioning of a witness about his version of the facts and pointing out inconsistencies with the testimony of other witnesses, does not

necessarily trigger rehabilitation." *See also State v. Carr*, 725 P.2d 1287, 1291 (Or. 1986) ("The issue of the truthful character of the victim was not raised by testimony suggesting a motive of the victim to lie."). Eugenio urges that we apply the reasoning of these courts.

We acknowledge that other jurisdictions seem to follow "stricter" rules. We observe, however, that the *Dring* opinion emphasizes, similar to *Anderson*, that "[i]t is for the trial court, exercising its discretion, to determine whether given conduct constitutes a direct or indirect attack on a witness's character for truthfulness." *Dring*, 930 F.2d at 691; *cf. Anderson*, 163 Wis. 2d at 347, 471 N.W.2d at 281.

We ultimately read Eugenio's argument as a request to re-evaluate the wisdom of the *Anderson* decision.[4] We are, however, bound to *Anderson* as it stands and have no authority to modify it. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256 (1997). Eugenio must therefore pursue this argument before the supreme court.

Accepting that the question of whether to admit supportive character evidence rests within the trial court's discretionary conclusions about the nature of the opposing party's trial presentation, Eugenio argues that the trial court misused this discretion. We apply a deferential standard to a trial court's discretionary ruling. We only inquire whether the trial court applied the proper standards and whether it applied those stan-

---

[4] We reach this conclusion based on Eugenio's statement in his reply brief that: "The error in the test announced in *Anderson* is that it is based on a finding that the examination conducted and the evidence presented is 'tantamount to an accusation that a witness is lying.' "

dards in a logical manner. *See State v. Rogers,* 196 Wis. 2d 817, 829, 539 N.W.2d 897, 902 (Ct. App. 1995).

As noted above, the trial court chiefly relied on Eugenio's opening statement to reach its determination that the victim's character had been attacked. Eugenio argues, however, that the trial court could not consider the opening statement. He contends that opening statements do not fit the confines of § 906.08(1)(b), STATS., which requires that the witness be "attacked by opinion or reputation evidence *or otherwise.*" (Emphasis added.)

■

We reject Eugenio's argument. We acknowledge that it is a black letter principle that a lawyer's argument is not evidence. *See* WIS J I—CRIMINAL 157 ("Remarks of the attorneys are not evidence"). But while opening statements are not probative of the facts that a jury has to resolve, they are probative of the nature of a party's trial presentation. Indeed, in *Anderson* we examined the "questioning" of the witness to measure whether the trial court correctly admitted the supportive character evidence. *See Anderson,* 163 Wis. 2d at 349, 471 N.W.2d at 281–82; *see also Hernandez,* 192 Wis. 2d at 257–58, 531 N.W.2d at 350 (noting that the trial court considered the "tone" of cross-examination). We do not see any practical distinction between the questioning of a witness and opening arguments where an attorney foreshadows what such questioning will reveal. Both could reasonably support a determination that a party is calling into doubt the witness's truthful character.

Eugenio also challenges the trial court's assessment of the opening statement. We will start with a necessarily lengthy excerpt:

[Counsel]: Who does [the victim] tell about [the assault] and when? You'll hear testimony that depends on when she's asked about that as well. Could have been in February of 1995 to [the school counselor]. Could have been in 1993, when she was in third grade. It could have been—and you will hear testimony that it might have been remembered coincidentally after a school program about touching that she didn't attend, could have been you'll hear testimony to a friend or it could have been to the school counselor she was seeing due to problems with confidence.

Repeating a lie doesn't make it true. You will hear all these different versions because every time she's told someone the story has changed. What didn't change was the attention she got for telling the story, the excitement. You don't get this kind of attention if you tell people that your mom returns the movies to Blockbuster when you were five years old but you sure get a lot when you tell them that your mom—when this happened.

[The Court]: Counsel, again, that is argument. You are asking the jury to make certain reasonable inferences in a summation as opposed to indicating motive, etc., the way you're presenting it. It's not argument. Continue.

[Counsel]: Sorry. You will hear testimony that as a result of this disclosure police officers came to see her, social workers came to see her. She went to court. She met with victim/witness people. She met with district attorneys. You will hear that she received a great deal of attention for this disclosure.

Eugenio suggests that these opening arguments simply foreshadowed his trial presentation, which focused on pointing out inconsistencies in the victim's story, not on attacking her character for truthfulness.

However, we believe that these opening statements support the trial court's determination that Eugenio was also challenging the victim's truthful character. First, we glean from the trial court's interruption that it was concerned about the nature and tone of these opening statements. Moreover, we believe that this excerpt demonstrates that Eugenio was planning to do more than reveal factual inconsistencies in the victim's various statements, thereby hoping that the jury would find the victim to be mistaken about what happened. Rather, he wanted the jury to consider whether the victim was purposely lying about these events because she so enjoyed the attention she was getting. Eugenio's trial strategy involved more than simply challenging the victim's credibility on her inability to accurately recall; Eugenio was also suggesting that the victim had fabricated the entire story. We understand why the trial court concluded that Eugenio was attacking this victim's character for truthfulness and uphold its ruling.

■

We now turn to Eugenio's complaint that the trial court improperly applied the "doctrine of completeness." This doctrine enables an opposing party to introduce a whole document or an out-of-court statement or recording when the other party offers just an excerpt. *See* § 901.07, STATS. The rule is premised on a concern that part of a statement may not give the factfinder the "total picture." *See* 7 BLINKA, *supra*, § 107.1, at 30.

This issue arose after Eugenio conducted his cross-examination of the victim. He had focused on the inconsistencies between the victim's testimony and her earlier out-of-court statements. The following is a sample:

[Counsel]: Okay. Now, when you first talked to [the school counselor], you told her only that Jose [sic] had touched your privates; is that right?

[Victim]: Yes.

[Counsel]: And then when you talked to [the county social worker] you told her that he rubbed your privates; is that true?

[Victim]: Yes.

[Counsel]: And when you talked to [the police investigator], you told him [sic] he poked you; is that right?

[Victim]: Yes.

[Counsel]: . . . And when you testified at the preliminary hearing, you were asked exactly what he did and you said--you were asked and when he touched your vagina, what exactly did he do and you said he just touched it. Isn't that right?

[Victim]: Yes.

The State accordingly moved to have its other witnesses testify regarding the consistencies between what the victim said during previous interviews and what she testified to at trial. The court ruled that the State could introduce these statements.

Eugenio maintains that the court made a legal error when it applied the doctrine to these circumstances. He argues that "simply using a portion of the victim's prior statement to demonstrate an inconsistency does not open up the remainder of her out-of-court statement for admission into evidence." He emphasizes how this court's decision in *Wikrent v. Toys "R" Us, Inc.*, 179 Wis. 2d 297, 309–10, 507 N.W.2d 130, 135 (Ct. App. 1993), *overruled on other grounds by Steinberg v. Jensen*, 194 Wis. 2d 439, 534 N.W.2d 361

(1995), warned that this doctrine should not be used to make an inconsistent out-of-court statement into a "Trojan Horse" that opens the trial to all the remaining out-of-court statements.

The State responds that this court's later decision in *State v. Sharp*, 180 Wis. 2d 640, 511 N.W.2d 316 (Ct. App. 1993), approved the introduction of remaining portions of allegedly inconsistent out-of-court statements in circumstances similar to this case. In *Sharp*, also a sexual assault case, the defendant also cross-examined the victim about her earlier statements to persons involved with the investigation, hoping to suggest that those conversations "influenced" the victim's "recall." *See id.* at 652, 511 N.W.2d at 321. There, we held that "[u]nder the rule of completeness, the State could offer the testimony of the specific content of the challenged interviews and conversations to address the implications of [the defendant's] cross examination . . . ." *Id.* at 653, 511 N.W.2d at 322.

We agree with the State that the trial court's decision in this case was sound under *Sharp*. While we acknowledge the continuing validity of the "Trojan Horse" warning that this court issued in *Wikrent,* 179 Wis. 2d at 309–10, 507 N.W.2d at 135, it must be taken in context. The *Wikrent* decision emphasized that the party who sought to apply the doctrine had made "no showing" that the whole out-of-court statement was necessary to give the factfinder the full picture of what happened. *See id.* at 310, 507 N.W.2d at 135. Thus, the "Trojan Horse" warning means only that a party's use of an out-of-court statement to show an inconsistency does not *automatically* give the opposing party the right to introduce the whole statement. The opposing party must first demonstrate why "fairness" requires that the remaining portions also be considered. *See id.*

But Eugenio adds that the trial court erred because it "made no finding that fairness required that the state be allowed to introduce the entire statement . . . ." While the trial court's findings are sparse, they are sufficient. The trial court considered the questions that Eugenio asked during cross-examination and determined that they were intended to show inconsistencies on a "number of occasions." We further observe that Eugenio's pattern of cross-examination fulfilled what he had foreshadowed during opening statements—that the victim had engaged in a systematic pattern of lying about the events.[5] We therefore conclude that the trial court had sufficient reason to permit the State to introduce other portions of the victim's previous statements to rebut that theory.[6]

[5] Although the trial court did not make this same connection between Eugenio's opening remarks and his pattern of cross-examination, when we review a trial court's discretionary decisions, we may independently search the record to uphold its ruling. *See State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983).

[6] Eugenio also seems to attack the continuing validity of this court's interpretation of the "doctrine of completeness" in *State v. Sharp*, 180 Wis. 2d 640, 511 N.W.2d 316 (Ct. App. 1993). He observes that some of the decisions that the *Sharp* court relied on have been subsequently criticized, specifically those related to the conclusion in *Sharp* that the doctrine applies to oral statements. *See id.* at 656–57, 511 N.W.2d at 323–24. Eugenio concludes that these later cases "indicating that the rule of completeness does not apply to oral conversations are persuasive precedent which this court should follow." However, we are bound by *Sharp* and cannot change its rule. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256.

*By the Court.*—Judgment affirmed.