COURT OF APPEALS
DECISION
DATED AND FILED

April 15, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1576**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV3977

IN COURT OF APPEALS
DISTRICT I

ESTATE OF ANNIE YANG AND SARINA YANG,

PLAINTIFFS-RESPONDENTS,

V.

CHRISTOPHER T. SMITH, MD AND CONTINENTAL CASUALTY COMPANY,

DEFENDANTS-APPELLANTS,

DEF INSURANCE COMPANY, GHI INSURANCE COMPANY AND INJURED PATIENTS AND FAMILIES COMPENSATION FUND,

DEFENDANTS.

APPEAL from a judgment of the circuit court for Milwaukee County: CARL ASHLEY, Judge. *Affirmed*.

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM. Christopher T. Smith, MD and Continental Casualty Company (collectively Dr. Smith) appeal from a judgment of the circuit court entered in favor of the Estate of Annie Yang and Sarina Yang (collectively the Yangs) following a jury trial on the medical malpractice action filed by the Yangs as a result of Annie's death following a surgical procedure Dr. Smith performed on Annie.[1]  For the reasons set forth below, we affirm.

## BACKGROUND

¶2  On February 18, 2023, Annie, who had known issues with an inherited blood disorder known as spherocytosis and enlargement of the spleen called splenomegaly, went to the Emergency Department of Aurora Sinai Medical Center.  She complained of severe vomiting, nausea, malaise, and pain in the upper right quadrant of her abdomen, and she appeared jaundiced.

¶3  After Annie's admission to the hospital, Dr. Pablo Bozovich, a hospitalist, oversaw Annie's care.  As part of that care, Dr. Bozovich ordered a fentanyl patch on February 21, 2018, for Annie's pain.  The order included instructions to change the patch every three days.

¶4  Annie also received consults from several doctors, including Dr. Smith, a general surgeon.  Dr. Smith recommended that Annie have her spleen

---

[1] We note that while the Honorable Carl Ashley signed the judgment entered in this matter, the Honorable Christopher Foley presided over the proceedings, including the pretrial proceedings and the trial itself, and denied the motion for a new trial at the center of the dispute in this appeal.

and gallbladder removed, and Dr. Smith performed surgery on Annie on February 23, 2018. Annie lost an estimated 1,300 cubic centimeters of blood during the surgery, but there were no noted complications. Dr. Smith left the hospital around 5:00 p.m. following the surgery.

¶5 Dr. Bozovich continued to manage Annie's care, and between 11:00 p.m. and midnight on February 23, 2018, Annie began exhibiting clinical signs of instability, including severe and uncontrolled pain, dropping blood pressure, increasing heart rate, and increasing respiratory rate. Annie also became increasingly obtunded. Eventually, Annie was moved to the intensive care unit (ICU) and intubated.

¶6 In an effort to determine the cause of Annie's post-operative symptoms, Annie was sent for a CT scan to determine if Annie was suffering from a pulmonary embolism. However, instead of a pulmonary embolism, the CT scan suggested an occult injury to the stomach or bowel.

¶7 Dr. Smith was notified of Annie's deteriorating condition on the morning of February 24, 2018, and he performed an exploratory laparotomy later that afternoon. During the procedure, he discovered a three centimeter laceration to the posterior fundus of Annie's stomach with peritoneal gastric contents. In other words, Dr. Smith discovered that Annie had a cut in her stomach and her stomach contents were leaking into her abdominal cavity. Dr. Smith repaired the laceration, and Annie was returned to the ICU for recovery. Despite the repair, Annie's condition continued to deteriorate, and she died on February 26, 2018.

¶8      The Yangs filed this medical malpractice suit against Dr. Smith, alleging that Dr. Smith was negligent and Annie died as a result of that negligence.[2]  More specifically, based on the expert medical opinion provided by Dr. Charles Goldman, the Yangs argued that Dr. Smith negligently created a laceration in Annie's stomach when he removed her spleen on February 23, 2018, and then negligently failed to immediately identify and repair that laceration at the time of surgery on February 23, 2018.  The case proceeded to a jury trial.[3]

¶9      Over the course of the proceedings, Dr. Smith raised the issue of negligence on the part of others involved in Annie's care, particularly as it related to Dr. Bozovich, and argued for adding Dr. Bozovich to the special verdict form both before and during trial.  When the issue of the care provided by other doctors first arose during motions in limine, the trial court indicated that testimony about the conduct of other doctors, such as Dr. Bozovich, would be allowed in order to fully present the facts, but the trial court warned that no other doctors would be added to the special verdict form, unless the testimony amounted to evidence that the other doctors were negligent.  When the issue arose again during the discussion of the special verdict form prior to submitting the case to the jury for deliberation, the trial court found that Dr. Bozovich would not be included on the

_____

[2] The original complaint filed on July 6, 2020, did not name Sarina, Annie's younger sister, as a plaintiff, and Sarina was added in an amended complaint filed on June 25, 2021. Sarina asserted claims for loss of companionship and pecuniary losses stemming from Annie's lost income.  Both the original and amended complaint also named Dr. Gregory M. Rosner and Aurora Sinai Medical Center, Inc. as defendants.  Dr. Rosner and Aurora Sinai Medical Center have since been dismissed from this action.  At no time was Dr. Bozovich named as a defendant in this matter.

[3] We note that Dr. Smith died during the pendency of the proceedings, and he did not testify at trial.  Rather, his deposition testimony was read into the record at trial.

4

special verdict form because Dr. Goldman never actually testified at trial that Dr. Bozovich fell below the standard of care for a hospitalist and was negligent.

¶10    The jury ultimately found Dr. Smith negligent. Dr. Bozovich was not included on the special verdict form for the jury's consideration of Dr. Bozovich's role in Annie's death, and the special verdict form only listed Dr. Smith for the jury's consideration.

¶11    Dr. Smith moved for a new trial, arguing that the trial court erroneously excluded Dr. Bozovich from the special verdict form.[4] The trial court denied Dr. Smith's motion because "[t]here was no qualified expert opinion offered in evidence in this trial as to the applicable standard of care for a hospitalist and that Dr. Bozovich violated that standard." There was, therefore, "no basis for the jury to find Dr. Bozovich causally negligent."

¶12    Dr. Smith appeals. Additional relevant facts will be set forth as necessary.

## DISCUSSION

¶13    On appeal, Dr. Smith argues that the trial court erroneously denied his motion for a new trial, and he renews his arguments related to the special verdict form.

¶14    "A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of

---

[4] Dr. Smith raised additional arguments in his motion for a new trial that he has not raised on appeal. Therefore, we do not discuss these additional arguments further.

evidence, or because of excessive or inadequate damages, … or in the interest of justice." WIS. STAT. § 805.15(1) (2023-24).[5] In reviewing a trial court's decision to deny a motion for a new trial, "we recognize that 'a [trial] court is in a better position than an appellate court to determine whether confidence in the correctness of the outcome at the original trial or hearing has been undermined.'" *Morden v. Continental AG*, 2000 WI 51, ¶87, 235 Wis. 2d 325, 611 N.W.2d 659 (citation omitted).

¶15    Dr. Smith argues that he should receive a new trial because the trial court erroneously excluded Dr. Bozovich from the special verdict form and his substantial rights were affected by Dr. Bozovich's absence from the special verdict form.    We disagree, and we conclude that the trial court properly excluded Dr. Bozovich because of the lack of expert testimony at trial to support a finding that Dr. Bozovich was negligent.    With no such evidence introduced at trial, Dr. Bozovich could not be added to the special verdict form, and therefore, the trial court properly denied Dr. Smith's motion for a new trial.

¶16    It is well-established that "when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tort-feasors." *Connar v. West Shore Equip. of Milwaukee, Inc.*, 68 Wis. 2d 42, 44-45, 227 N.W.2d 660 (1975).  "Only one question must be affirmatively answered by the trial judge before submitting a negligence question to the jury: Is there evidence of conduct which, if believed by

---

[5] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

the jury, would constitute negligence on the part of the person or other legal entity inquired about." *Id.* at 45. As applied in a case alleging medical malpractice, the answer to this question requires an expert opinion "to a reasonable degree of medical certainty" that a physician was negligent before any question of negligence can be included on the special verdict form. *Zintek v. Perchik*, 163 Wis. 2d 439, 456, 471 N.W.2d 522 (Ct. App. 1991), *rev'd on other grounds*, *Steinberg v. Jensen*, 194 Wis. 2d 439, 534 N.W.2d 361 (1995). "[T]he decision whether the special verdict shall inquire as to the alleged negligence of a non-party raises a question of law, namely whether evidence exists which warrants submission of the matter to the jury." *Zintek*, 163 Wis. 2d at 454.

¶17 In this case, Dr. Smith's request to include Dr. Bozovich fails the threshold requirement that evidence of conduct that would constitute negligence, if believed by the jury, exists in the record because Dr. Goldman's testimony never rose to the level of an expert medical opinion that Dr. Bozovich breached the applicable standard of care. Without such evidence, Dr. Bozovich could not be included on the special verdict form. Thus, the trial court properly excluded Dr. Bozovich from the special verdict and properly denied Dr. Smith's subsequent request for a new trial on the grounds that Dr. Bozovich should have been included on the special verdict form.

¶18 At trial, the Yangs presented the opinion of Dr. Goldman to support their medical malpractice claim. He described his profession as "a general surgeon, surgical oncologist, and also palliative care physician," and his "field of expertise" was described as "general surgery." He further testified that he had experience performing and teaching the type of surgery Annie underwent on February 23, 2018, to remove her spleen and gallbladder.

¶19     As to the substance of his opinion, Dr. Goldman's report that was presented at trial stated, "The lack of immediate investigation of [Annie's] complaints during the evening of February 23, 2018 is a clear violation of *the standard of surgical care* and is directly causative of the patient's death." (Emphasis added.)  Dr. Goldman then consistently testified to the standard of care for a surgeon and the breach of that standard of care by Dr. Smith first in creating the laceration in Annie's stomach and second in failing to immediately identify and repair the laceration.

¶20     Importantly, while Dr. Goldman testified to familiarity and experience working with hospitalists, Dr. Goldman never described or expanded on a standard of care for a hospitalist, such as Dr. Bozovich, or what a breach of that standard of care would be.  In other words, Dr. Goldman's testimony never rose to the level of an expert opinion that Dr. Bozovich breached the standard of care for a hospitalist.

¶21     To be sure, Dr. Goldman developed critiques of the use of the fentanyl patch that Dr. Bozovich originally ordered for Annie and of Dr. Bozovich's failure to contact Dr. Smith earlier about Annie's deteriorating condition.  However, while this may have been properly admitted as testimony to present the full picture of the facts and even to allow for an opportunity to weaken a case for Dr. Smith's negligence, Dr. Goldman's critiques do not amount to an expert opinion on whether Dr. Bozovich breached a standard of care.  *See Zintek*, 163 Wis. 2d at 457 (distinguishing criticisms of the medical care provided with expert opinion on negligent medical care).

¶22     Indeed, Dr. Goldman was consistent in his opinion that the breach of the standard of care in this case amounted to Dr. Smith creating the laceration and

then Dr. Smith's failure to immediately identify and repair the laceration. Furthermore, Dr. Goldman's critique related to the fentanyl patch was ultimately turned into an opinion that Dr. Smith should have removed the fentanyl patch prior to Annie's surgery, and Dr. Smith should not have allowed the continued use of the fentanyl patch once Annie went into surgery. Thus, we conclude that Dr. Bozovich was properly excluded from the special verdict form given the absence of an expert opinion that Dr. Bozovich breached the standard of care.

¶23 Relatedly, citing to *Seifert v. Balink*, 2017 WI 2, 372 Wis. 2d 525, 888 N.W.2d 816, Dr. Smith takes issue with Dr. Bozovich's exclusion from the special verdict form based on the trial court's finding that Dr. Goldman was not qualified to define the standard of care for a hospitalist, and Dr. Smith maintains that the finding that Dr. Goldman was not able to testify to the standard of care for Dr. Bozovich was a myopic view of the law covering admission of expert testimony for medical malpractice. We review the trial court's finding in this regard for an erroneous exercise of discretion. *Bayer ex rel. Petrucelli v. Dobbins*, 2016 WI App 65, ¶19, 371 Wis. 2d 428, 885 N.W.2d 173.

¶24 When addressing whether Dr. Bozovich would be included on the special verdict form, the trial court initially entertained that Dr. Goldman could provide an expert opinion on any alleged negligence by Dr. Bozovich when the trial court stated:

> You know, I don't agree that he's not competent to offer those opinions. The idea that a surgeon based on their training, education and experience doesn't understand that—I mean, I can see an argument that they don't understand the general standard of care for a hospitalist. But the idea that they—that they can't form a valid, credible opinion as to whether or not the failure to notify under these circumstances fell below the standard of care for a hospitalist, I disagree with that.

However, after reviewing the trial testimony, the trial court found that Dr. Goldman did not actually testify that he knew what the standard of care was for a hospitalist or what it meant as applied to Dr. Bozovich as a hospitalist. In other words, Dr. Goldman did not provide testimony amounting to an expert opinion that Dr. Bozovich breached the applicable standard of care, and Dr. Goldman failed to establish that he was qualified to testify as an expert on the standard of care for a hospitalist.

¶25 Given the substance of Dr. Goldman's testimony at trial, we discern no error in the trial court's finding. As previously stated, Dr. Goldman described himself as a general surgeon, with training and experience in general surgery. Dr. Goldman did testify that he was familiar with the standard of care for managing a post-operative patient, the signs and symptoms of sepsis, the signs and symptoms of post-operative complications, and the communications a surgeon expects to receive on the condition of a post-operative patient. However, none of this testimony amounts to the standard of care that applies to Dr. Bozovich as a hospitalist. In fact, at one point during cross-examination, Dr. Goldman stated, "I'm a surgeon talking about surgeons." He also testified, "[I]t's very clear that Dr. Bozovich is not a surgeon. I'm not—in the medical legal setting, I cannot opine a[s] to what his standard of care is." He then clarified that while he stated in his deposition prior to trial that it was Dr. Bozovich's duty to do a workup of Annie's symptoms on the night of February 23, 2018, that was "opinion" and "that can't go beyond that being [his] opinion."

¶26 Thus, the record demonstrates that Dr. Goldman was not excluded from providing an expert opinion on the standard of care applicable to Dr. Bozovich simply because Dr. Goldman was himself a surgeon. Rather, the record demonstrates that Dr. Goldman was excluded from providing an expert

opinion on the standard of care applicable to Dr. Bozovich because Dr. Goldman's testimony failed to demonstrate that he had any understanding of the applicable standard of care through any of his training or experience as a surgeon. Dr. Goldman specifically denied being able to testify about the standard of care applicable to a hospitalist such as Dr. Bozovich.

¶27     Wisconsin law requires that a medical provider is held to the standard of the average physician "in the class to which he [or she] belongs, acting in the same or similar circumstances." *Shier v. Freedman*, 58 Wis. 2d 269, 283-84, 206 N.W.2d 166 (1973).  Therefore, in light of Dr. Goldman's testimony that he was able to testify to the standard of care for a surgeon and not to a hospitalist, the trial court did not erroneously exercise its discretion in finding that Dr. Goldman was not qualified as an expert to testify to the issue of Dr. Bozovich's negligence.

## CONCLUSION

¶28     In sum, we conclude that the trial court properly excluded Dr. Bozovich from the special verdict form and, therefore, we conclude that the trial court appropriately denied Dr. Smith's motion for a new trial.  Consequently, we affirm.[6]

> *By the Court.*—Judgment affirmed.

---

[6] As a result of our conclusion, we do not address the harmless error argument raised by the Yangs on appeal.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.